WHATLEY DRAKE & KALLAS, LLC
Edith M. Kallas (*admitted pro hac vice*)
ekallas@wdklaw.com
Ilze C. Thielmann (*admitted pro hac vice*)
ithielmann@wdklaw.com
380 Madison Avenue, 23rd Floor
New York, NY 10017
Tel:   (212) 447-7070
Fax:   (212) 447-7077

THE CONSUMER LAW GROUP, LLP
Alan M. Mansfield (SBN: 125998)
alan@clgca.com
9466 Black Mountain Road, Suite 225
San Diego, CA  92126
Tel:   (619) 308-5034
Fax:   (888) 341-5048

*Attorneys for Plaintiffs*
[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CAROL GALVAN, and LOLIS TACKWOOD, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>KROSSLAND U.S.A., L.P. dba KROSSLAND USA, LLC,<br><br>    Defendant. | Case No. 8:08-CV-00999-JVS (ANx)<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Hearing Date:  October 24, 2011<br>Time:   1:30 p.m.<br>Judge:  Hon. James V. Selna<br>Trial Date: January 17, 2012<br><br>Complaint Filed: September 5, 2008 |

PLAINTIFFS' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF CLASS CERT.

Case No. 8:08-CV-00999-JVS (ANx)

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL SUMMARY OF THE ACTION ......................................... 3

III.    ARGUMENT ...................................................................................... 5

     A.     The Proposed Class Meets All the Requirements of Rule 23 ................. 5

           1.     Numerosity ................................................................... 6

           2.     Commonality ................................................................ 6

           3.     Typicality .................................................................... 8

           4.     Adequacy of Representation ........................................... 9

     B.     Certification is Warranted Under Rule 23(b)(3) ................................ 10

           1.     Common Issues Predominate ........................................ 10

                  a.     Common Issues Predominate on the UCL Claims .............. 10

                  b.     Common Issues Predominate on the CLRA Claim ............. 12

                  c.     Common Issues Predominate on Plaintiffs' Other Claims .. 12

                  d.     California Law May Be Applied to a Multi-State Class ..... 13

                  e.     California's Choice-of-Law Analysis Supports Certification of a Multi-State Class ..................................... 15

                  f.     Calculation of Damages Does Not Defeat Predominance .. 16

           2.     A Class Action is Superior to Other Methods of Adjudication ..... 16

           3.     Trial of the Class Claims Would be Manageable ......................... 17

     C.     Certification is Also Warranted Under Rule 23(b)(1) and (b)(2) ........... 18

IV.    CONCLUSION .................................................................................. 19

1

# TABLE OF AUTHORITIES

2

**PAGE**

3

**FEDERAL CASES**

4

*Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426 (S.D. Cal. 2011) ... 6, 19

5

*Anunziato v. eMachines, Inc.*,
   402 F.Supp.2d 1133 (C.D. Cal. 2005) .................................................... 4

6

7

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) .............................................................. 8

8

*Atlantic Mut. Ins. Co. v. Brotech Corp.*,
   857 F.Supp. 423 (E.D. Pa. 1994) ....................................................... 14

9

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ..................................................... 2, 5, 7, 16

10

*Chabner v. United of Omaha Life Ins. Co.*,
   225 F.3d 1042 (9th Cir. 2000) ........................................................... 11

11

12

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2007) ......................................................... 7, 18

13

*Collins v. Int'l Dairy Queen, Inc.*,
   168 F.R.D. 668 (M.D. Ga. 1996) ....................................................... 14

14

15

*Crawford v. Honig*,
   37 F.3d 485 (9th Cir. 1994) ............................................................... 9

16

*Educ. Testing Servs. v. Simon*,
   95 F.Supp.2d 1081 (C.D. Cal. 1999) ................................................. 14

17

18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................... *passim*

19

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................................... 1, 5

20

21

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ............................................................. 6

22

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
   2007 U.S. Dist. LEXIS 44459 (N.D. Cal. 2007) ................................... 15

23

24

*In re Lilco Sec. Litig.*,
   111 F.R.D. 663 (E.D.N.Y. 1986) ....................................................... 14

25

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ....................................................... 16

26

27

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   264 F.R.D. 603 (N.D. Cal. 2009) ....................................................... 15

28

*In Re USF Tel. Billing Practices Litig.*,
   219 F.R.D. 661 (D. Kan. 2004) ..................................................................9, 17

*Keilholtz v. Lennox Hearth Prods.*,
   268 F.R.D. 330 (N.D. Cal. 2010) ...............................................................13, 15

*Leszczynski v. Allianz Ins.* (S.D. Fla. 1997)
   176 F.R.D. 659 ...................................................................................................14

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas
   Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ....................................................10

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003)...............................................................6, 9, 18

*Negrete v. Allianz Life Ins. Co.*,
   238 F.R.D. 482 (C.D. Cal. 2006) .................................................................16

*Nicholson v. Williams*,
   205 F.R.D. 92 (E.D.N.Y. 2001) .....................................................................8

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) ...................................................................8

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ....................................................................................13, 14

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) ...................................................................6

*Stearns v. Ticketmaster Corp.*,
   2011 U.S. App. LEXIS 17454 (9th Cir. Aug. 22, 2011).........................8, 11, 12

*Valentino v. Carter Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996)........................................................................10

*Vega v. T-Mobile, Inc.*,
   564 F.3d 1256 (11th Cir. 2009)....................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. ___, 2011 U.S. LEXIS 4567 (2011)..............................................5, 7

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998)......................................................................19

*Westways World v. AMR*,
   218 F.R.D. 223 (C.D. Cal. 2003) .................................................................19

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ...................9

*Zinser v. Accufix Research Inst. Inc.*,
   253 F.3d 1180 (9th Cir. 2001)................................................................10, 19

**STATE CASES**

*Anthony v. Gen. Motors Corp.,*
   33 Cal.App.3d 699, 706 (1971)................................................................12

*Bank of the West v. Superior Court,*
   2 Cal.4th 1254 (1992)........................................................10, 11, 16

*Clothesrigger, Inc. v. GTE Corp.,*
   191 Cal.App.3d 605 (1987)................................................................15

*Cortez v. Purolator Air Filtration Prods.,*
   23 Cal.4th 163 (2000)........................................................5, 11

*Diamond Multimedia Sys., Inc. v. Superior Court,*
   19 Cal.4th 1036 (1999)................................................................16

*Fletcher v. Sec. Pac. Nat'l Bank,*
   23 Cal.3d 442 (1979)................................................................11

*Ghirardo v. Antonioli,*
   14 Cal.4th 39 (1996)........................................................12. 13

*In Re Tobacco II Cases,*
   46 Cal.4th 298 (2009)................................................................11

*Kwikset v. Superior Court,*
   51 Cal.4th 310 (2011)................................................................11

*Linder v. Thrifty Oil Co.,*
   23 Cal. 4th 429 (2000)................................................................11

*Mass. Mut. Life Ins. Co. v. Super. Ct.,*
   97 Cal.App.4th 1282 (2002)........................................................10, 11, 12

*Vasquez v. Superior Court,*
   4 Cal.3d 800 (1971)........................................................11, 17

*Washington Mut. Bank, F.A. v. Superior Court,*
   24 Cal.4th 906 (2001)................................................................15

**STATE STATUTES**

Cal. Bus & Prof. Code

    §17200 ........................................................................................1, 14

    §17535 ................................................................................................13

    §17538.9 ....................................................................................*passim*

Cal. Civ. Code

§1750, *et seq.* ........................................................................................... 1

§1770(a) ................................................................................................... 12

**FEDERAL RULES**

Federal Rules of Civil Procedure

Rule 23 ............................................................................................... 1, 5

Rule 23(a) ...................................................................................... 1, 5, 10

Rule 23(a)(1) ........................................................................................... 6

Rule 23(a)(3) ........................................................................................... 8

Rule 23(a)(4) ........................................................................................... 9

Rule 23(b) ............................................................................................... 5

Rule 23(b)(1) ................................................................. 1, 2, 6, 18, 19

Rule 23(b)(2) ............................................................ 1, 2, 6, 10, 18, 19

Rule 23(b)(3) ..................................................................................... *passim*

Rule 23(g) ............................................................................................... 9

## I.     INTRODUCTION

Plaintiffs seek certification of a plaintiff class under Federal Rules of Civil Procedure 23(b)(1), (2) and (3) for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*, violation of Cal. Bus. & Prof. Code §17538.9, and California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq.,* breach of contract, money had and received and unjust enrichment, and declaratory relief against Defendant Krossland Communications Inc. ("Krossland").  The proposed class (the "Class") consists of all persons who, since August 26, 2004 (the "Class Period"), purchased, other than for purposes of re-sale, pre-paid calling cards that were distributed by Krossland, residing in California, and all other states where Krossland distributed and sold pre-paid calling cards[1].

Defendant Krossland uniformly misrepresents, on point-of-sale advertising it distributes, the number of minutes of telephone service that a consumer will get using Krossland distributed pre-paid calling cards.  It conceals fees and other charges which reduce the number of calling time minutes consumers receive by as much as 50%. ¶¶4, 37-40.[2]  All of these practices are uniform and standardized, rendering this case ideal for class treatment.

In *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), the Ninth Circuit held that plaintiffs bear the burden of proving that the proposed class satisfies Rule 23's requirements.  Based on the information and evidence available as of the filing of this motion (which is still being supplemented), certification of this Class is appropriate because each requirement of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) is met, and to the extent that there are any individual issues Krossland could point to, common questions would predominate

---

[1]   Krossland distributed and sold pre-paid calling cards in at least five other states as well, but well over 99% of such sales occurred in California.  *See* discussion at §B.1.d., *infra.*

[2]   Unless otherwise indicated, references herein to "¶_" are to the operative Complaint.

1  over any such individual issues.  Finally, certifying this action is not only authorized
2  by Rule 23(b)(1) and (b)(2), but also under Rule 23(b)(3) as the superior way to
3  vindicate the rights of all Class members.  Class members, with their relatively small
4  individual monetary claims, will have little interest in individually controlling the
5  prosecution of this action. The action is also manageable, since the issues raised in
6  any individual action would be the same as those raised here.[3]

7      Plaintiffs' trial plan, including the Declaration of Julia Marlowe, Ph.D. (the
8  "Marlowe Decl."), submitted in ¶¶13-16 and as Ex. 5 to the Declaration of Alan M.
9  Mansfield in Support of Plaintiffs' Motion for Class Certification ("Mansfield
10  Decl."), shows in part how this case can be litigated on a class basis.  Significantly,
11  Dr. Marlowe's past studies have independently verified from early on in the Class
12  Period what Plaintiffs have alleged and testified to – that consumers only receive
13  about half the promised calling time minutes using pre-paid calling cards distributed
14  by Krossland.  Her Declaration shows manageable methods for establishing liability
15  and damages on a class-wide basis.

16      To prove their claims, Plaintiffs will also present examples of Krossland's
17  uniform advertisements and other representations stating that a consumer will receive
18  a certain number of minutes of talk time to a given location.  *See* Mansfield Decl., Ex.
19  4.  Plaintiffs will then present class-wide evidence showing that consumers receive,
20  on average, only about half of the promised number of minutes.  Krossland's sales
21  data will show that it annually has sold millions of dollars' worth of calling cards to
22  consumers during the Class Period.  Monetary calculations on behalf of the Class

23

24  [3]  The parties need not make an extensive evidentiary showing on the merits so long
25  as the Court is provided enough information to form a reasonable judgment on each
certification requirement.  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).
26  Krossland has yet to produce some of the requested evidence pertaining to class
certification, and has not responded to inquiries as to why it purportedly believes the
27  claims herein are not common to the Class.  Accordingly, Plaintiffs may need to
supplement the evidentiary record and address any arguments Defendant raises in
28  this regard in their reply.  Krossland may not properly claim Plaintiffs' showing is
deficient based on its own failure to timely produce relevant information.

PLAINTIFFS' MEMORANDUM OF POINTS AND          - 2 -          Case No. 8:08-CV-00999-JVS (ANx)
AUTHORITIES IN SUPPORT OF CLASS CERT.

would then be very simple: take the total dollar value of the cards sold by Krossland during the Class Period, and divide that total by the average difference between represented calling time and actual calling time. This case is thus ideally suited for class treatment.

## II.   FACTUAL SUMMARY OF THE ACTION

Many low-income individuals and immigrants purchase and use pre-paid calling cards to make calls to their home countries, and such cards are primarily targeted and marketed to immigrants and individuals who do not speak and read English as their first language. ¶¶3, 21-22, 31. Krossland's materials in particular targets the Latino market. Mansfield Decl. ¶9, Ex. 4. Krossland distributes various brands of pre-paid calling cards, serviced by less than ten separate carriers or service providers. Krossland distributes these cards to retailers throughout the State of California and a handful of other states. *See* Mansfield Decl., Ex. 1 (Deposition of Jay Lee ("Lee Dep.") at 36, 62); Mansfield Decl., ¶¶ 7-10.

The pre-paid cards distributed by Krossland are uniformly advertised as providing a certain number of minutes of telephone calling time to a specific destination, *e.g.*, a $5.00 card might be advertised as providing 150 minutes of calling time from a certain location to Mexico. ¶5; Mansfield Decl., Ex. 4.

Plaintiffs all purchased Krossland-distributed cards. ¶¶ 10, 12, 14; Carol Galvan Responses to Defendant's First Set of Interrogatories, dated December 30, 2009 ("Galvan Responses") No. 1; Lolis Tackwood Responses to Defendant's First Set of Interrogatories, dated December 30, 2009 ("Tackwood Responses") No. 1, attached to the Mansfield Decl. as Exs. 2 and 3. Based on representations about these cards on posters that were posted at the point of sale, Plaintiff Galvan expected to receive five hours of calling time from a $5.00 calling card for calls from Los Angeles to Mexico. Galvan Responses, No. 1. Likewise, based on representations about these Krossland-distributed cards on posters that were posted at the point of sale, Plaintiff Tackwood expected to receive eight hours of calling time for a $5.00

calling card to make calls to Colorado.  Tackwood Responses, No. 1.  However, Plaintiffs received substantially less than the minutes of calling time they expected based on the statements they saw on the Krossland-distributed posters.  ¶¶ 10, 12, 14; Galvan Responses, Nos. 2-6, 17; Tackwood Responses, Nos. 2-6, 17.

Advertising materials such as the posters that are posted at the point of sale (like the posters viewed by Plaintiffs and attached as Ex. 5 to the Mansfield Decl.) for the Krossland-distributed calling cards both are provided by carrier companies and designed by Krossland itself.  Lee Dep. at 65:9-23; 67:19-24 (Mansfield Decl., Ex. 1).   The content of the cards that Krossland distributes is also provided by the carriers, but Krossland provides its opinions to the carriers on the content of the cards and on the disclosures on the cards.  *Id.* (Mansfield Decl., Ex. 1).  These posters, which are distributed by Krossland along with the cards, indicate how many minutes of calling time to a specific destination are available for a specific card.  ¶¶23, 32; Mansfield Decl. ¶5, Ex. 4 (examples of posters advertising cards distributed by Krossland).   However, because of hidden and inadequately disclosed fees and charges, customers uniformly do not receive the number of minutes advertised.  ¶¶33-37; Mansfield Decl. ¶6, Ex. 5.

As the "disclosures" are hidden on the back of the card or at the bottom of a poster in fine print and fail to adequately disclose fees, and Krossland's failure to make purported disclosures in Spanish, while simultaneously marketing the cards to the Latino-speaking community by printing the entire face of the card in Spanish, Plaintiffs can show how Krossland uniformly violates Section 17538.9 of the California Business and Professions Code.[4]

---

[4]  Section 17538.9(b) states: "If a language other than English is used . . . on the card or packaging other than for dialing instructions, [fees and other charges] shall also be disclosed in that language on the card or packaging and in the point of sale disclosure...."  *See also Anunziato v. eMachines, Inc.,* 402 F.Supp.2d 1133, 1138 (C.D. Cal. 2005) (noting the high percentage of the California population that speaks a language other than English at home, and stating that "[t]he goal of consumer protection is not advanced by eliminating large segments of the public from coverage

Krossland as a pre-paid calling card distributor has direct liability under Section 17538.9:

>  (17)   No person shall offer or sell any prepaid calling card or prepaid calling services that do not contain the information required to be disclosed on the card  or packaging as provided in paragraph (3).

>  (18)   A distributor that sells directly to a retail vendor shall provide the retail vendor with the current information required by paragraph (3) in a form that may be displayed by the retail vendor as provided in paragraph (3).

If Plaintiffs can establish that the calling cards distributed by Krossland and sold directly to retail vendors in California (about 9,000 in total) (*see* Mansfield Decl., ¶8) do not contain the information required by Section 17538.9(a)(3), Krossland's conduct violates this statute, constituting a *per se* violation of the UCL. Such a finding results in strict liability for restitution and injunctive relief, since under Section 17538.9(b)(17), Krossland cannot legally sell such cards.  *Cortez v. Purolator Air Filtration Prods.*, 23 Cal.4th 163, 177 (2000).

## III.   ARGUMENT

In ruling on a motion for class certification the Court must determine whether the moving party has shown that the Rule 23 requirements are satisfied.  However, the Court presumes the factual allegations of the Complaint can be proven at trial. *Blackie,* 524 F.2d at 901-02.  The Supreme Court recently affirmed the long standing rule that, when determining whether certification is proper, a district court can only look to the merits of a plaintiff's underlying claims to the extent that there is overlap with the Rule 23 analysis.  *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. ___, 2011 U.S. LEXIS 4567, *21 (June 20, 2011) ("*Dukes*"); *see also Hanon*, 976 F.2d at 509.

### A.     The Proposed Class Meets All the Requirements of Rule 23

Under Rule 23, the Court should certify a proposed class when it meets all the prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of

under the UCL…where they suffer actual harm merely because they…lacked the language skills to appreciate the particular unfair or false representation in issue".)

representation – and at least one of the requirements of Rule 23(b).  The Court may choose to order certification under 23(b)(1), (b)(2) and (b)(3), or just one of those provisions.  *Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426, *7-9 (S.D. Cal, July 25, 2011) (addressing certification motion under Rule 23(b)(2) and (b)(3)).[5]

### 1.  Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Class certification is particularly appropriate when the proposed class has a large number of potential members who are geographically diverse.  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  As Krossland has sold millions of dollars' worth of calling cards in California through 9,000 retail outlets in California and a handful in several other states (Mansfield Decl., ¶¶ 7, 8), there are likely tens of thousands of consumers who are similarly affected by Krossland's conduct[6].  The size of the Class and its geographic dispersion makes joinder of Class members impracticable.

### 2.  Commonality

The commonality requirement is to be construed permissively, as the existence of shared legal issues with divergent factual predicates or a common core of facts with disparate legal remedies is sufficient to satisfy this requirement.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "[O]ne single issue common to the proposed class" is enough.  *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000) (internal citations omitted).

---

[5]  When ordering dual certification, the Court can either certify separate 23(b)(1), (2) and 23(b)(3) classes, with the 23(b)(1) and (2) class being mandatory and the 23(b)(3) class receiving class notice and an opportunity to opt out of the damages claims asserted in the case ("divided certification"), or certify a single class pursuant to 23(b)(1) and (2) but order that absent class members be notified of the class action and have an opportunity to opt out of the case ("composite certification").  *Molski v. Gleich,* 318 F.3d 937, 947 (9th Cir. 2003).

[6]  Of these 9,000 stores, less than ten are located outside California.  *Id.* at ¶ 8.  Thus, while Plaintiffs seek certification of a multi-state class, it is likely only a very small percentage of Class members are located outside California.

1    The testimony and documents produced so far establish how it can be shown

2  on a class-wide basis: (a) how Krossland's uniform representations on posters

3  regarding the number of calling minutes that would be provided by the calling cards it

4  distributes can be shown to be uniformly misleading; (b) how Krossland's purported

5  disclosures regarding fees can be shown to be uniformly inadequate and violative of

6  Bus. & Prof. Code §17538.9; and (c) how the value of calling cards through the

7  application of fees and other charges is such that consumers on average receive only

8  half of the actual number of calling time minutes represented.   The numerous

9  common issues in this case are readily apparent from the allegations contained in the

10  Complaint and the nature of the claims.  *See, e.g.,* ¶51; *Chamberlan v. Ford Motor*

11  *Co.,* 402 F.3d 952, 962 (9th Cir. 2007) (predominant common questions can be plain

12  enough that listing of examples is sufficient where such issues are "readily apparent"

13  from Complaint).  Because the claims at issue are based on standardized practices and

14  uniform promotional materials such as submitted with the Mansfield Decl., such

15  issues can be proven on a class-wide basis and present an ideal situation for class

16  treatment.

17    Despite the many common issues presented, in essence there are really only

18  two questions here, which are common to the entire Class, such that the answers

19  resolve all claims of Class members in one stroke: (1) do the calling cards distributed

20  by Krossland provide significantly fewer calling-time minutes than represented, and

21  (2) are the disclosures it provides to retail vendors contrary to the requirements of

22  Section 17538.9(b)(3), making it illegal for Krossland to sell such cards?

23  Accordingly, common factual and legal claims exist in this case.  *Dukes*, U.S. LEXIS

24  4567 at *19-20 (holding that the common issue "must be of such a nature that it is

25  capable of class-wide resolution – which means that determination of its truth or

26  falsity will resolve an issue that is central to the validity of each one of the claims

27  with one stroke."); *Blackie*, 524 F.2d at 902.

28  / / /

### 3.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  This requirement is satisfied if the representative's claims "are reasonably coextensive with those of absent class members [as] they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020. As long as the named plaintiffs' and class members' claims arise from the same course of conduct and are based on the same legal theory, plaintiffs are typical. *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 332 (C.D. Cal. 1998).

As set forth in the Complaint and in the evidence cited in the Mansfield Decl. and the discovery responses of the Plaintiffs attached as Exs. 2 and 3 to the Mansfield Decl., Plaintiffs' claims and those of Class members are all based on Krossland's common course of conduct.  Plaintiffs bought the cards in question, only received half of the purchased talk time, and were thereby misled.  Plaintiffs' claims are also based on the same legal theories as those of the absent Class members: practices in violation of the UCL, the CLRA, breach of contract, declaratory relief and common counts/unjust enrichment.  If Plaintiffs are able to prove the standardized practices alleged in the Complaint, Class members are entitled to the same remedies – declaratory relief, damages and restitution of monies made by Krossland.  Such claims are properly certified to proceed under California law.  *Stearns v. Ticketmaster Corp.*, Nos. 08-56065, 09-56126, 10-55341, 2011 U.S. App. LEXIS 17454, *11-15 (9th Cir., Aug. 22, 2011).   Thus, Plaintiffs satisfy the typicality requirement. *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

The typicality requirement is also satisfied in a case like this one, where injunctive and declaratory relief may be a significant component of the case.  *See Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001) ("Typicality may be assumed where the nature of the relief sought is injunctive and declaratory.")

/ / /

/ / /

### 4.      Adequacy of Representation

Rule 23(a)(4)'s requirement that "the representative parties will fairly and adequately protect the interests of the class" has two parts: (1) the plaintiff's interests must not materially conflict with those of absent Class members, and (2) counsel for plaintiffs must be able to vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020; *Molski*, 318 F.3d at 955.

There are no irreconcilable conflicts or antagonistic interests between Plaintiffs and Class members.  Both have a strong interest in establishing Krossland's liability, in having Krossland remedy its practices of misrepresenting the number of minutes available on calling cards, and ensuring the disclosures Krossland disseminates comport with California law.  All Class members share interests both in being recompensed for their losses and in deterring such conduct in the future.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010); *In Re USF Tel. Billing Practices Litig.*, 219 F.R.D. 661, 668 (D. Kan. 2004).

Plaintiffs have been actively involved in this case from the outset, understand the nature of the allegations and the relief sought on behalf of the Class, and are prepared to fulfill their duties to the Class.  They understand that they are class representatives and have actively participated in the case by providing discovery responses, sitting for depositions and attending one mediation session.  Galvan Responses, Nos. 5, 8, 17, 18; Tackwood Responses, Nos. 5, 8, 17, 18 (Mansfield Decl., Exs. 2 and 3).  Since there is no evidence this lawsuit is collusive or of any substantial antagonism between Plaintiffs and other Class members, Plaintiffs are adequate class representatives.  *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994).

Plaintiffs' counsel also meet the requirements of Rule 23(g).  Counsel have extensive experience in prosecuting class litigation.  Both before and since the action was filed, Plaintiffs' counsel have expended hundreds of hours and thousands of dollars identifying, investigating and prosecuting the claims asserted.  Plaintiffs' counsel have shown they are capable of, and have committed substantial resources to,

1    representing the Class, and are fully committed to vigorously prosecuting this action

2    on the Class's behalf.  *See* Mansfield Decl. ¶¶ 11-12, Exs. 6-8.

3    **B.    Certification is Warranted Under Rule 23(b)(3)**

4    Once the requirements of Rule 23(a) are satisfied, Rule 23(b)(3) permits class

5    certification if "the court finds that the questions of law or fact common to class

6    members predominate over any questions affecting only individual members, and that

7    a class action is superior to other available methods for fairly and efficiently

8    adjudicating the controversy."  Both these requirements are satisfied here.

9    **1.    Common Issues Predominate**

10    The Rule 23(b)(3) predominance inquiry asks whether the proposed class is

11    "sufficiently cohesive to warrant adjudication by representation."  *Local Joint*

12    *Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d

13    1152, 1154 (9th Cir. 2001).  To establish predominance of common issues, a party

14    seeking class certification is not required to show that legal and factual issues raised

15    by the claims of each class member are identical.  Rather, predominance focuses on

16    "the notion that the adjudication of common issues will help achieve judicial

17    economy."  *Valentino v. Carter Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996);

18    *Zinser v. Accufix Research Inst. Inc.,* 253 F.3d 1180 (9th Cir. 2001).  As detailed

19    above and submitted with this motion, common evidence will be used to prove that

20    Krossland's promotional materials are uniformly misleading, and that its purported

21    disclosures of fees and other charges are inadequate and violate California law.  If

22    established at trial, this will necessarily prove the claims of the Class, thereby

23    achieving judicial economy in litigating these claims.

24    **a.    Common Issues Predominate on the UCL Claims**

25    The UCL claims are appropriate for class treatment, as the California Supreme

26    Court has repeatedly held that relief under the UCL is available without

27    "individualized proof of deception, reliance, and injury. . . ."  *Bank of the West v.*

28    *Superior Court*, 2 Cal.4th 1254, 1267 (1992); *Mass. Mut. Life Ins. Co. v. Super. Ct*.,

97 Cal.App. 4th 1282, 1289-95 (2002) (certifying UCL and CLRA claims arising out of deceptive sales practices based on omissions of material facts).  On a fraudulent business practice claim, only the representative plaintiffs need show that the misrepresentations at issue were a "substantial factor" in their purchasing decision, and that they would not have done so had the material facts not been misrepresented to them.  *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326-332 (2011); *In Re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009).  Plaintiffs' discovery responses provide such evidence.  Galvan Responses, Nos. 2, 5, 8; Tackwood Responses, Nos. 2, 5, 8 (Mansfield Decl., Exs. 2 and 3).  Where, as here, "numerous consumers are exposed to the same dubious practice by the same seller … proof of the prevalence of the practice as to one consumer would provide proof for all."  *Vasquez v. Superior Court*, 4 Cal.3d 800, 808 (1971);  *Stearns*, 2011 U.S. App. LEXIS 17454 at *18 (citing *Vasquez*).

The UCL's unlawful prong also borrows violations of other statutes, such as the CLRA and Bus. & Prof. Code § 17538.9, and makes them independently actionable and a *per se* violation of the statute.  See *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  Thus, if Plaintiffs can establish that Krossland has violated these statutes, Plaintiffs' and Class members' right to restitution automatically flows from that violation, as the UCL imposes strict liability and requires disgorgement of Krossland's profits made as a result thereof.  *Cortez v. Purolator Air Filtration Prods.*, 23 Cal.4th at 177; *see Bank of the West*, 2 Cal.4th at 1267 ("One requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom." [internal citations omitted]).  Whether Krossland's conduct was unlawful, fraudulent, or unfair will not be decided based on facts peculiar to each Class member, but rather on a single set of facts applicable to all, since knowledge of the wrongful conduct is not relevant under the UCL.  *Linder v. Thrifty Oil Co.*, 23 Cal.4th 429 (2000); *Fletcher v. Sec. Pacific Nat'l Bank*, 23 Cal.3d 442 (1979).

### b.      Common Issues Predominate on the CLRA Claim

Plaintiffs' CLRA claim is similarly focused entirely on Krossland's conduct rather than any Class member's unique attributes and appropriate for certification. *Mass Mut.*, 97 Cal.App.4th at 1293-94 (upholding certification of CLRA claim based on misrepresentations and material omission of facts by defendant).  *Stearns*, 2011 U.S. App. LEXIS 17454, *18.   Under the CLRA, the primary issue is whether Krossland engaged in an "unfair or deceptive act or practice" by misrepresenting the number of calling time minutes available through use of calling cards and posters Krossland distributed.  Those acts or practices, if established, would violate CLRA sections 1770(a)(9) ("advertising  services  with  the  intent  not  to  sell  them  as advertised")  and  (a)(16) ("representing  that  the  subject  of  a  transaction  has  been supplied in accordance with previous representation when it has not").  Once broad dissemination  of  common  misinformation  has  been  established, "the  ultimate question of whether the undisclosed information was material [is] a common question of fact suitable for treatment in a class action." *Mass. Mut.*, 97 Cal.App.4th at 1294.

### c.      Common Issues Predominate on Plaintiffs' Other Claims

Common  questions  likewise  predominate  with  respect  to  Plaintiffs' other claims.  For example, on the breach of contract claims, Plaintiffs can show that all Class members, in purchasing the calling cards, accepted Krossland's offer of a specific amount of calling time to specific locations for a specific amount of money. *Anthony v. Gen. Motors Corp.*, 33 Cal.App.3d 699, 706 (1971) (holding that uniform advertisements can create contractual obligations).

Because the elements of an unjust enrichment claim also focus on Krossland's conduct, no individualized inquiry is necessary on that claim.  The elements of an unjust enrichment claim are (1) receipt of a benefit and (2) the unjust retention of that benefit at the expense of another, which can be established if Plaintiffs show it was illegal for Krossland to sell these cards. *Ghirardo v. Antonioli*, 14 Cal.4th 39, 51

(1996).  Plaintiffs and Class members would have the same vested interest in such funds.  As such, common issues predominate with respect to the unjust enrichment claim.  *See Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) (finding that common issues predominated over any questions affecting only individual class members with respect to unjust enrichment claim).

Plaintiffs' Bus. & Prof. Code § 17538.9 claim is based upon the allegations that, *inter alia,* Krossland fails to make disclosures expressly required by the statute. ¶¶80-83.  Either Krossland complies with this statute or it does not.  Because such conduct on Krossland's part is the same for the entire Class, no individualized inquiry is necessary, and restitution and injunctive relief is equally proper for violation of §17538.9 under Bus. & Prof. Code § 17535.

### d. California Law May Be Applied to a Multi-State Class

While the vast majority of Class members reside in California, the claims described above can be asserted not only on behalf of California consumers, but also consumers residing in other states.  It is appropriate for this Court to apply California law to the claims of all Class members.  In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985), the Supreme Court explained: "We must first determine whether Kansas law conflicts in any *material* way with any other law which could apply. *There can be no injury* in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit."  *Id.* (emphasis added).  Here, California's significant contacts with and interest in the claims at issue, and the absence of a material conflict with other relevant states' laws, support application of California law to the entire Class's claims.

First, a court may apply its state's law to the claims of out-of-state class members where there is a "significant contact or aggregation of contacts" between class members' claims and the forum, such that the application of the forum state's law would be neither "arbitrary or unfair."  *Shutts*, 472 U.S. at 821-2.  California is Krossland's largest market for distributing calling cards, and Krossland is based in

California.  Mansfield Decl. ¶¶ 7-10.  Krossland conducts a great deal of business within the State, disseminates cards and posters from here throughout the United States, and due to its presence here, it is reasonable to assume that almost all Class members reside in California.  Plaintiffs are residents of California.  Mansfield Decl., Exs. 2 and 3.

Having established these substantial contacts with California, the burden shifts to Krossland to show that California law "conflicts in [some] *material* way with any other law which could apply."  *Shutts*, 472 U.S. at 816 (emphasis added).  In undertaking an analysis of whether there are material conflicts among the relevant state laws, this Court need only consider the laws of the "other jurisdictions that are connected to this suit," as "in many situations a state may be free to apply *one of several choices of law*."  *Id.* at 823-4.  As one court noted, "*Shutts* does not require us to apply the law of each state in which plaintiffs reside nor does it prohibit the application of one state's law to all plaintiffs, regardless of residence."  *In re Lilco Sec. Litig.*, 111 F.R.D. 663, 670 (E.D.N.Y. 1986).

The Ninth Circuit has previously held that differences in the consumer protection laws of all 50 states (which is not at issue here) were not sufficient to destroy predominance of common questions.  *Hanlon*, 150 F.3d at 1022-23 ("[T]he idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims").  Similarly, the states' laws governing breach of contract claims are also substantially similar.  *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997); *Collins v. Int'l Dairy Queen, Inc.*, 168 F.R.D. 668, 676 (M.D. Ga. 1996); *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423, 429 (E.D. Pa. 1994) (all discussing analysis of state contract laws and finding no material conflict).  The relevant consumer statutes generally prohibit unfair or deceptive acts or practices.  *Educ. Testing Servs. v. Simon*, 95 F.Supp.2d 1081, 1090 (C.D. Cal. 1999) ("Liability under Section 17200 of California's Business and Professions Code is strict, rendering defendants' mental states irrelevant.").

1    Finally, the laws of unjust enrichment, whether as a remedy or as a stand alone

2    claim, do not materially differ.  Where the underlying claim is based on the violation

3    of a statutory prohibition, California federal courts have certified unjust enrichment

4    claims to proceed on a nationwide basis, even where (unlike here) the defendant is

5    not based in California.  *See, e.g., Keilholtz, supra,* 268 F.R.D. 330; *In Re Abbott*

6    *Labs Norvir Anti-Trust Litig*., No. 04-1511, 2007 U.S. Dist LEXIS 44459 (N.D. Cal.,

7    June 11, 2007) ("Here, the variations among some States' unjust enrichment laws do

8    not significantly alter the central issue or the manner of proof.  Common to all class

9    members and provable on a class-wide basis is whether Defendant unjustly acquired

10   additional revenue or profits by virtue of an anti-competitive premium on the price of

11   Norvir."); *In Re: Static Random Access Memory (SRAM) Antitrust Litig.,* 264 F.R.D.

12   603, 606 (N.D. Cal 2009).

13          **e.      California's Choice-of-Law Analysis Supports**

14                   **Certification of a Multi-State Class**

15          Krossland also bears the burden of establishing that another state's law will

16   apply or that such an analysis would make the action unmanageable: "[S]o long as the

17   requisite significant contacts to California exist, a showing that is properly borne by

18   the class action proponent, California may constitutionally require the other side to

19   shoulder the burden of demonstrating that foreign law, rather than California law,

20   should apply to class claims."  *Washington Mut. Bank, F.A. v. Superior Court*, 24

21   Cal.4th 906, 920-21 (2001) (internal citations omitted); *see also Clothesrigger, Inc. v.*

22   *GTE Corp.*, 191 Cal.App.3d 605, 616 (1987) ("California's more favorable

23   [consumer protection] laws may properly apply to benefit nonresident plaintiffs when

24   their home states have no identifiable interest in denying such persons full

25   recovery.").  There can be no dispute all the calling cards and posters Krossland

26   distributes emanate from here, making application of California law appropriate.  *Id.*

27   Since there are no material relevant conflicts, there are no insurmountable choice-of-

28   law issues that make this matter unmanageable or negate a finding of predominance

1   based on Krossland's substantial California presence.  *Diamond Multimedia Sys., Inc.*

2   *v. Superior Court*, 19 Cal.4th 1036, 1063-4  (1999) (applying California law to

3   nationwide class, as California "has a clear and substantial interest in preventing

4   fraudulent practices in this state which may have an effect in both California and

5   throughout the country").

### f.   Calculation of Damages or Restitution Does Not Defeat Predominance

8   Where the amount of damages or restitution is subject to a formulaic

9   calculation, it does not negate the conclusion that common questions predominate.

10  *Blackie*, 524 F.2d at 905; *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 493 (C.D.

11  Cal. 2006) (holding that for purposes of class certification, it is sufficient that

12  plaintiffs show "a facially plausible method" for establishing proof of monetary relief

13  on a class-wide basis).  Here, monetary relief can be calculated on a class-wide basis

14  based on studies showing that, on average, consumers only receive approximately

15  50% of the face value of the pre-paid calling cards distributed and sold during the

16  Class Period.  Marlowe Decl., ¶¶ 26-27 (Mansfield Decl., Ex. 5).  In addition, under

17  *Bank of the West, supra,* 2 Cal.4th at 1267, Krossland's revenues or profits from the

18  illegal sale of these cards is an appropriate measure of monetary relief.

### 2.   A Class Action Is Superior to Other Methods of Adjudication

20  Rule 23(b)(3) provides that certification is appropriate if class treatment "is

21  superior to other available methods for fairly and efficiently adjudicating the

22  controversy."   The test is not whether class cases are superior to thousands of

23  individual actions but whether it is superior compared to other group-wide methods

24  of resolution available to adjudicate this controversy.  *In re NASDAQ Market-Makers*

25  *Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996).

26  Because the expenditure on each calling card sold is relatively small (on

27  average between $5 and $10 per card), individual Class members will have little or

28  no interest in individually controlling the prosecution of this action.  See Fed. R. Civ.

---

Proc. 23(b)(3)(A).  *Vasquez*, 4 Cal.3d at 808 ("Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct.").

As no Notice of Related Case has been filed to date, this action is the only one presently proceeding to enforce the rights and remedies of these Class members against Krossland.  *See* Fed. R. Civ. Proc. 23(b)(3)(B).  Concentrating these claims in this forum is highly desirable because Krossland is based here and Plaintiffs' claims will completely resolve the claims of other Class members, rendering duplicative actions wasteful and inefficient.  In *In Re USF Tel. Billing Practices Litig.*, 219 F.R.D. at 679, the Court held that certification of a nationwide breach of contract claim was proper, based on the use of form materials and uniform charges:

> The millions of class members are dispersed across the country, each with relatively similar claims. It can reasonably be anticipated that many of the individual claims will involve relatively insubstantial amounts of money such that a class action is perhaps the only feasible way for plaintiffs to pursue those claims. Thus, the court is persuaded that a class action is by far the most superior method for resolving the claims at issue in this lawsuit.

*Id.* at 679.

The same situation is presented here.  Thus, as the Ninth Circuit held in *Hanlon*, 150 F.3d at 1023, "from either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery."

### 3.    Trial of the Class Claims Would Be Manageable

Because proof in this litigation in terms of Krossland's liability will come from Krossland and little information will be required from the individual Class members,

resolution of this action on a class-wide basis is manageable.  *See* Fed. R. Civ. Proc. 23(b)(3)(D).  A trial plan detailed in ¶¶ 13-17 of the Mansfield Decl. summarizes how these claims can be litigated on a class-wide basis, both in terms of establishing liability and appropriate remedies.  "The proposal of a workable trial plan will often go a long way toward demonstrating that manageability concerns do not excessively undermine the superiority of the class action vehicle."  *Vega v. T-Mobile, Inc.*, 564 F.3d 1256, 1279 n.20 (11th Cir. 2009); *Chamberlan*, 402 F.3d at 961 (while not required, trial plan that was submitted was part of evidentiary record that supported class certification).

For any class certified under Rule 23(b)(3), the Court must direct the best notice practicable under the circumstances to Class members.  As set forth in ¶ 8 of the Mansfield Decl., Krossland maintains records of its 9,000 distributors and retailers who can post class notice in the same way Krossland distributes its promotional materials that it claims provides the required notice.  Thus, if class notice is required, the parties can negotiate details of a class notice to be distributed to and posted by the retail vendors who sold the calling cards distributed by Krossland.

## C.   Certification Is Also Warranted Under Rule 23(b)(1) and (b)(2)

Rule 23(b)(1)(A) provides for class certification where separate actions would create the risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  For Plaintiffs' declaratory relief claim, proceeding under Rule 23(b)(1) is an optimal way for both Class members and Krossland to ensure that the determination of Krossland's obligations is made on a consistent basis.  *Molski*, 318 F.3d at 950.

Rule 23(b)(2) also allows certification where defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  A 23(b)(2) class should be certified for injunctive and declaratory relief claims "if class

1   members complain of a pattern or practice that is generally applicable to the class as a

2   whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).   That is what is

3   alleged here.

4          Class certification under Rule 23(b)(1) and (2) in an action that seeks both

5   injunctive and monetary relief is appropriate where the claim for damages is

6   "incidental" to the claims for injunctive and/or declaratory relief or automatically

7   flow from the determination of liability – such as where strict liability attaches from

8   the determination of a statutory violation.   *See Zinser*, 253 F.3d at 1195; *Aho v.*

9   *Americredit Fin. Servs*., No. 10-1373, 2011 U.S. Dist. LEXIS 80426, *18-19 (S.D.

10  Cal. July 25, 2011).   Because the monetary award here would "not require inquiry

11  into new, nor substantial, nor complex determinations regarding each Plaintiff's

12  individual case," this case can also be certified as a class action pursuant to Rules

13  23(b)(1) and (2).   *Westways World v. AMR,* 218 F.R.D. 223, 241-42 (C.D. Cal. 2003).

14  **IV.    CONCLUSION**

15          For all the reasons set forth above, this Court should certify this case to

16  proceed on behalf of the Class and appoint Plaintiffs as the class representatives and

17  the undersigned law firms as Class Counsel.

18  Dated:  August 26, 2011                    Respectfully submitted,

19                                             THE CONSUMER LAW GROUP

20

21  By:___/s/ Alan M. Mansfield_____
                                               ALAN M. MANSFIELD
22                                             alan@clgca.com
                                               9466 Black Mountain Road, Suite 225
23                                             San Diego, CA  92126
                                               Telephone:  (619) 308-5034
24                                             Facsimile:   (888) 341-5048

25                                             WHATLEY DRAKE & KALLAS, LLC
                                               Edith M. Kallas, Esq.
26                                             ekallas@wdklaw.com
                                               Ilze C. Thielmann, Esq.
27                                             ithielmann@wdklaw.com
                                               380 Madison Avenue, 23rd Floor
28                                             New York, NY  10017
                                               Telephone:  (212) 447-7070
                                               Facsimile::  (212) 447-7077

1

2

WHATLEY DRAKE & KALLAS, LLC
Sara C. Hacker, Esq.
shacker@wdklaw.com
2001 Park Place North, Suite 1000
Birmingham, AL  35203
Telephone:   (212) 447-7070
Facsimile::   (212) 447-7077

3

4

5

6

WOOD LAW FIRM, LLC
E. Kirk Wood (ASB-2937-W55E)
ekirkwood1@cs.com
2900 1st Avenue South, Suite A
Birmingham, AL 35233
Tel: (205) 612-0243

7

8

9

10

11

LAW OFFICES OF GREG L. DAVIS
Greg L. Davis
gldavis@knology.net
6987 Halcyon Park Drive
Montgomery, AL  36117
Tel: (334) 832-9080

12

13

14

15

Howard Rubinstein
Attorney at Law
howardr@pdq.net
914 Waters Avenue, Suite 20
Aspen, Colorado 81611
Tel: (832) 715-2788

16

*Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

---